Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George M. Marovich | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5640 | **DATE** | 9/26/2003 |
| **CASE TITLE** | Garcia vs. MPC Products Corporation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for} on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION AND ORDER.** MPC's motion for summary judgment is granted. Motion by defendant for decision on its motion for summary judgment is granted.

| | | | |
|---|---|---|---|
| X | Docketing to mail notices. | | SEP 2 9 2003 |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials |
| | Copy to judge/magistrate judge. | 03 SEP 26 PM 2:50 | |
| | JD6 courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials |

34

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BARBARA GARCIA,                )
                               )
              Plaintiff,       )
                               )   No. 00 C 5640
     v.                        )
                               )
MPC PRODUCTS CORPORATION       )   Judge George M. Marovich
                               )
              Defendants.      )

DOCKETED
SEP 2 9 2003

## MEMORANDUM OPINION AND ORDER

Now before the Court is Defendant MPC Products Corporation's ("MPC") Motion for Summary Judgment. Plaintiff Barbara Garcia ("Garcia") filed this action against MPC alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000(e) et seq. ("Title VII"). For the reasons set forth below, the Court grants MPC's Motion for Summary Judgment.

## BACKGROUND

Unless otherwise noted, the following facts are undisputed.[1] Garcia is an African-American woman who was employed in MPC's Coil Winding Department from October 1998 through her resignation in March 2000. She received and filled requests for wound coils. Specifically, she received request forms from her Group Leader, Sima Kogan ("Kogan"), who sat on a long bench with Garcia and two other employees, Lucy Stankiewicz ("Stankiewicz") and Stella Beda ("Beda"). Two other employees worked in the department

---

[1] The majority of these facts are taken from MPC's Local Rule 56.1(a)(3) Statement of Material Facts. See infra Part II.

approximately 10 to 20 feet away, Barbara Woodward ("Woodward") and Demetrice Dent ("Dent"), both African-American women.

After working at MPC for two months, Garcia began to have personal problems with Kogan, who thought that Garcia's portable space heater was making their area too hot. Garcia requested that Mike Strejc ("Strejc"), the Department Manager, inform Kogan that Garcia was permitted to keep the heater. He did so. Garcia soon came to believe that someone was tampering with her heater, moving and pouring liquids on it. Garcia also reports that Kogan spoke loudly to her, threw papers at her rather than passing them, blew in her face, told her that her hair looked funny, made comments on her makeup and clothes and questioned her about why Kevin Crum, a Caucasian man, brought her coffee and talked with her on her breaks. Once Kogan even flipped Garcia's hair. Garcia reported this to Strejc, who she subsequently saw speaking with Kogan. Kogan never again flipped Garcia's hair.

Garcia also had personal problems with Stankiewicz and Beda. Garcia indicates that Stankiewicz "passed gas" near her and left used tissue at Garcia's work station. On October 5, 1999, Garcia witnessed Stankiewicz in concert with Beda tampering with her coil winding machine. Garcia reported this to Strejc and Evelyn Munsif ("Munsif"), her immediate supervisor. Despite the facts that Garcia failed to produce the faulty coil that she claimed resulted; and that she gave no indication that she felt the

2

tampering was in any way related to her race, Strejc held a thorough investigation. Strejc ultimately concluded that no tampering occurred. A few days thereafter, Kogan, Stankiewicz and Beda all met with Frank Steinwandtner ("Steinwandtner"), Human Resources Manager. Both Beda and Stankiewicz also met with Strejc who reminded them that tampering with machinery was forbidden and would result in disciplinary action. No further tampering incidents were alleged.

On October 14, 1999, Garcia sent a letter to Joe Roberti ("Roberti"), President of MPC (copied to Steinwandtner) discussing the alleged tampering and MPC's quick response to her complaint. She also vaguely remarked on "race problems" and people of color. Garcia failed to explain these remarks nor did she link them to the tampering claim. In response, Steinwandtner had Strejc and Dale Sylvan, Vice-President of Operations, hold a meeting of the Coil Winding Department Group Leaders reminding them that negative teasing, insults and harassment between employees was not to be tolerated.

Later, Garcia questioned Kogan on the way she was performing her job and Kogan called her a "smart nigger." Garcia reported the incident to Munsif, who within days held a meeting with Garcia and Kogan to discuss what had happened. Kogan never again used a racial slur towards Garcia. Additionally, Garcia claims that Kogan questioned her about her relationship with a Caucasian

3

man. Garcia did not file a complaint about this incident.

Garcia also experienced some personal problems with Strejc and Munsif. Garcia points to an incident when Strejc shook his fist at her from 25 feet away. However, Garcia admits that she does not believe this was done because of her race. She also points to the fact that Munsif prevented Garcia's participation in the non-company-sponsored money collection for co-worker birthdays and illnesses.

Neither of the other two African-American employees in the Coil Winding group witnessed or experienced any racial harassment. And, at no time in Garcia's complaints about the harassment did she indicate that she felt it was racially motivated.

By early March, Garcia had planned to move from Illinois to San Diego and had gotten as far as moving some of her possessions. On March 6, 2000, Garcia distributed copies to as many as 20 MPC employees (including Woodward, Kogan and Dent) of an open letter she had drafted entitled "My Disappointment in your Behavior as Human Beings." After distributing the letter, Garcia immediately left work. She sent another letter dated the same day to Roberti entitled "Voluntary Termination of Employment from MPC," indicating her resignation as of March 8, 2000. Upon her return to work on March 7, 2000, Garcia was brought into two meetings with MPC management, including Steinwandtner and Strejc.

Steinwandtner informed her of how upset many employees had become over the letter she had distributed and he asked her to apologize to Woodward, Dent and Kogan. Garcia refused. At that point, Strejc had Garcia gather her belongings and leave the facility. Strejc and Steinwandtner claim that they did not terminate her employment, but that she was merely being sent home for the day. Garcia claims that she was, in fact, terminated. On the following day, March 8, 2000, Garcia filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

## DISCUSSION

I. Standards for Summary Judgment

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). The moving party has the initial burden of submitting affidavits and other evidentiary material to show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Only genuine disputes over "material facts" can prevent a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To overcome a defendant's motion, the plaintiff cannot rest on the pleadings but must, by affidavit or other means, set forth specific facts showing that there is a genuine issue of fact. See Fed. R. Civ. P. 56(e). While the

record "and all reasonable inferences drawn from it [are to be viewed] in the light most favorable to the party opposing the motion," Bisciglia v. Kenosha Unified Sch. Dist. No. 1, 45 F.3d 223, 226 (7th Cir. 1995), the non-movant must show more than "some metaphysical doubt" regarding the facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

II. Local Rules 56.1(a)(3) & (b)(3)

In addition to the requirements for summary judgment set forth in Rule 56(c), Local Rules 56.1(a)(3) and 56.1(b)(3) require the parties moving for and opposing summary judgment to state the material facts of the case supported by references to the record. Local Rule 56.1(a)(3) requires the moving party to submit a statement which sets forth facts it contends are material and which entitle the moving party to judgment as a matter of law. The movant is required to set forth each fact in a short numbered paragraph and include a specific reference to the record to support the fact.

Local Rule 56.1(b)(3) requires the party opposing the motion to submit a response to each numbered paragraph of the movant's Local Rule 56.1(a)(3) statement of material facts, indicating any disagreement with the moving party. If the party opposing summary judgment fails to state any disagreement with the facts set forth in the movant's statement, those facts are deemed admitted. The standard set out in Local Rule 56.1 has been

6

strictly enforced in this district, see Pasant v. Jackson Nat'l Life Ins. Co., 768 F. Supp. 661, 663 (N.D. Ill. 1991); Davis v. Frapolly, 756 F. Supp. 1065, 1069-70 (N.D. Ill. 1991), and in the Court of Appeals. See Brown v. United States, 976 F.2d 1104, 1108 (7th Cir. 1992); Schulz v. Serfilco, Ltd., 965 F.2d 516, 519 (7th Cir. 1992); Capitol Converting Equip., Inc. v. LEP Transp., Inc., 965 F.2d 391, 394-95 (7th Cir. 1992); Bell, Boyd & Lloyd v. Tapy, 896 F.2d 1101, 1103 (7th Cir. 1990).

MPC filed a Statement of Uncontested Material Facts along with its motion for summary judgment against Garcia. That statement clearly asserts that the incidents in question were not of a racial nature, nor were they sever and pervasive and that in any case MPC took reasonable steps to prevent and correct the behavior. The statements are properly supported by Garcia's deposition and affidavits of Steinwandtner, Strejc, Woodward and Dent. Garcia failed to file a 56.1(b)(3) statement in response and failed to file any opposition to the summary judgment either in memorandum or motion form. Thus, the facts in Defendant's Local Rule 56.1 Statement of Material Facts are deemed admitted.

III. Racial Harassment Claims

A. Hostile Work Environment Claim

In order to prevail on her hostile work environment sexual harassment claim, Garcia must essentially demonstrate three things. First, Garcia must show that her work environment was

both subjectively and objectively hostile. See <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993). The law "does not prohibit all verbal or physical harassment in the workplace," <u>Oncale v. Sundowner Offshore Servs., Inc.</u>, 523 U.S. 75, 80 (1998); instead, to amount to a hostile work environment, Garcia's harassment must be "so 'severe or pervasive' as to 'alter the conditions of [the victim's] employment and create an abusive working environment.'" <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 786 (1998) (quoting <u>Meritor Sav. Bank, FSB v. Vinson</u>, 477 U.S. 57, 67 (1986)).[2]

Second, Garcia must demonstrate that she was subjected to the hostile work environment because of her race. See 42 U.S.C. § 2000e-2(a)(1) (it is unlawful "to discriminate against any individual . . . because of such individual's . . . race"). In other words, Garcia must show that "but for the [her race, s]he . . . would not have been the subject of harassment." <u>Pasqua v. Metropolitan Life Ins. Co.</u>, 101 F.3d 514, 517 (7th Cir. 1996) (citing <u>McDonald v. Santa Fe Trail Transp. Co.</u>, 427 U.S. 273, 282

---

[2] In answering this question, courts must examine all of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Harris</u>, 510 U.S. at 23; see also <u>Baskerville v. Culligan Int'l Co.</u>, 50 F.3d 428, 430 (7th Cir. 1996). Although less severe acts of harassment must be frequent or part of a pervasive pattern of objectionable behavior in order to rise to an actionable level, "extremely serious" acts of harassment do not. <u>Faragher</u>, 524 U.S. at 788.

n. 10 (1976)).

Finally, assuming that she can demonstrate that she was subjected to a hostile work environment because of her race, Garcia must establish a basis for making MPC liable for the discriminatory acts. Here, it is undisputed that Strejc and Munsif were her supervisors and Kogan, Beda and Stankiewicz were not. MPC will be vicariously liable for the discriminatory acts of Strejc and Munsif only if it took reasonable care to prevent and correct the harassing behavior and Garcia failed to avoid the harm either by taking advantage of those preventative and corrective opportunities or otherwise. See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1988). Further, MPC will be vicariously liable for the discriminatory acts of Kogan, Beda and Stankiewicz only if it negligently failed to take reasonable steps to discover or remedy the harassment. See Wilson v. Chrysler Corp., 172 F.3d 500, 508 (7th Cir. 1999). More specifically, MPC cannot be found liable for racial harassment by Garcia's co-employee unless it "knew or should have known of the harassment, and failed to take immediate and appropriate corrective action." Guess v. Bethlehem Steel Corp., 913 F.2d 463, 464 (7th Cir. 1990); See also 29 C.F.R. § 1604.11(d).

MPC contends that Garcia has not raised an issue of fact with respect to any of these three issues. The Court finds that it need only address the last issue. Here, even assuming that

Garcia raises an issue of fact as to whether she suffered a hostile work environment based on her race, the Court agrees that her claim fails because, as a matter of law, Garcia cannot establish a basis for holding MPC liable.

Even if Garcia was subjected to race-based harassment by supervisors Strejc and Munsif, MPC cannot be held liable for it. It is clear that MPC took reasonable care to prevent and correct the harassing behavior. MPC had an employment policy which defined and prohibited illegal harassment. The policy encourages reporting of incidents of harassment and commits to respond promptly and where harassment is confirmed to take disciplinary action. Having never received a report of any alleged harassment by Strejc and Munsif, Garcia failed to avoid the harm by taking advantage of MPC's preventative and corrective opportunities.

Similarly, assuming Garcia was subjected to race-based harassment by co-workers Kogan, Stankiewicz and Beda, there is no basis to hold MPC liable for their actions. In light of the evidence submitted to this Court, there can be no doubt that MPC's response was a reasonable one designed to remedy the alleged harassment. Upon learning of Garcia's alleged harassment, MPC took immediate and appropriate corrective action that was reasonably calculated to prevent further harassment. The evidence reveals that upon learning of Garcia's allegations, MPC promptly investigated every incident Garcia raised.

Additionally, MPC management scheduled at least two meetings to try to resolve the allegations. Following those meetings, no further race-based harassment is alleged by Garcia. Indeed, tellingly, Garcia has not identified any additional measures or actions that MPC could have undertaken to more appropriately respond to her allegations. Summary judgment must therefore be granted in favor of MPC.

IV. Retaliation Claim

Garcia's Complaint also asserts that MPC discriminated against her in retaliation for her complaints about the alleged harassment by other MPC employees. Title VII prohibits, inter alia, an employer from discriminating "against any of his employees . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The McDonnell Douglas formula applies to retaliation claims as it does in the discrimination context. See e.g., Pafford v. Herman, 148 F.3d 658, 670 (7th Cir. 1998). Here, however, the Court need probe no further than Garcia's prima facie case.

In order to establish a prima facie case of retaliation, Garcia must establish that: (1) she engaged in a protected expression; (2) she suffered an adverse employment action by her employer; and (3) there was a causal link between the protected

11

expression and the adverse action. See Sweeney v. West, 149 F.3d 550, 555 (7th Cir. 1998); Eiland v. Trinity Hosp., 150 F.3d 747, 753 (7th Cir.1998). MPC contends that Garcia fails to establish all three elements.

In her Complaint, it is unclear what Garcia is attempting to assert regarding her retaliation. MPC has gleaned from her EEOC Charge of Discrimination, that Garcia alleges that she was terminated in retaliation for her complaints to management over various forms of harassing behavior that she allegedly experienced. Since Garcia has not taken the opportunity to clarify her position by way of a Response to this Motion for Summary Judgment, the Court will accept this generous interpretation of her Complaint for the purposes of this motion.

First, Garcia has not demonstrated that she engaged in a protected expression. Moreover, Garcia has not shown that she suffered any adverse employment action. Finally, Garcia cannot support the third prong of their prima facie claim of retaliation--a causal connection. To demonstrate a causal link, Garcia must present sufficient evidence that MPC "would not have taken the adverse action 'but for' the protected expression." Adusumilli v. City of Chicago, 164 F.3d 353, 363 (7th Cir.1998) (quoting McKenzie v. Illinois Dept. of Transp., 92 F.3d 473, 483 (7th Cir.1996)). Here, Garcia has not presented any evidence whatsoever that connects the purported treatment by Kogan,

Stankiewicz, Beda, Strejc and Munsif with Garcia's EEOC charge. Without evidence of adverse employment action and a causal connection to her protected activity (EEOC charge), Garcia's retaliation claim cannot survive.

In sum, because Garcia has not raised a genuine issue of material fact sufficient to demonstrate a prima facie case of retaliation, summary judgment must be granted on her retaliation claim.

## CONCLUSION

For the foregoing reasons, MPC's motion for summary judgment is granted.

ENTER:

GEORGE M. MAROVICH
UNITED STATES DISTRICT JUDGE

DATED: Sept. 26, 2003